UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | |
|---|---|
| KIMBERLY GOOTEE, | ) |
| Plaintiff, | ) Civil Action No. 5: 20-499-DCR |
| V. | ) |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security,[1] | ) **MEMORANDUM OPINION AND ORDER** |
| Defendant. | ) |

\*\*\*  \*\*\*  \*\*\*  \*\*\*

Plaintiff Kimberly Gootee appeals the Commissioner of Social Security's denial of her claim for disability insurance benefits. Specifically, she contends that the ALJ's decision is contrary to the opinions of the treating and examining physicians and the vocational expert. Gootee also argues that the ALJ did not properly evaluate her subjective complaints of pain. However, upon review of the record, the Court finds that the ALJ's decision was based upon substantial evidence and that he correctly applied applicable rules and regulations. As a result, the Commissioner's decision will be affirmed.

**I.**

Gootee filed the instant application for disability insurance benefits ("DIB") on January 17, 2018, alleging a disability beginning on May 31, 2017. [Tr. 202] Her claim was denied initially on May 24, 2018, and upon reconsideration on August 20, 2018. [Tr. 120, 125] ALJ

---

[1]  Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kijakazi is substituted as the defendant in this suit.

Jerry Lovitt held an administrative hearing on October 11, 2019. [Tr. 45-85] On November 5, 2019, he issued a written opinion denying benefits. [Tr. 2-38] The Appeals Council denied Gootee's request for review on September 4, 2020. [Tr. 13-17] Accordingly, this matter is ripe for judicial review. *See* 42 U.S.C. § 405(g).

## II.

The plaintiff was 56 years-old at the time of the ALJ's decision. She was married and lived with her husband, who receives Social Security disability benefits. The couple also live with their four school-aged grandchildren, of whom they had been awarded permanent custody. Gootee obtained her GED and most recently worked in 2017 in customer service for a durable medical equipment provider. [Tr. 57] She was terminated from that position after losing her temper during a customer's phone call.

Gootee contends she became unable to work around that same time based on a variety of medical problems. She complains of low back pain and uncontrolled diabetes, resulting in diabetic neuropathy of her lower extremities. Gootee asserts that she is unable to stand or walk for any significant period of time due to these issues. She also reports suffering from debilitating mental issues which prevent her from concentrating or dealing with stress. [Tr. 74]

John Belanger, M.D., was Gootee's primary care provider at times relevant to this matter. Treatment notes from 2016 through 2018 indicate that Dr. Belanger treated Gootee for diabetes. In July 2016, Belanger described the condition as "type 2 diabetes mellitus without complication, without long-term current use of insulin." [Tr. 401] By October 2016, Dr. Belanger noted that Gootee's fasting salivary glucose was running above 400 and she complained of burning and tingling in her feet. [Tr. 395] Belanger indicated that Gootee's

diabetes was very poorly controlled at that time due to noncompliance with medication and diet. He advised Gootee to "stop sugar" and prescribed Januvia. [Tr. 398]

Gootee saw Dr. Belanger in February 2017 for a diabetes follow-up, as well as complaints of panic attacks. [Tr. 385] She reported that she was no longer eating sweets and her fasting salivary glucose was in the 200s. Gootee advised Belanger that she recently discovered that her job was going to end which triggered a recurrence of panic attacks she experienced following a traumatic experience 15 years prior. She reported poor sleep and loss of appetite, but denied symptoms of depression or suicidal ideation. [Tr. 385] Belanger prescribed alprazolam for short term use as well as citalopram. [Tr. 387] Gootee reported in August 2017 that she never took the citalopram and was not adhering to Dr. Belanger's dietary recommendations. [Tr. 379]

Dr. Belanger noted at the time of Gootee's November 2017 check-up that the claimant was non-compliant with exercise and diet recommendations and that she was still smoking. [Tr. 373] Her blood sugar ran between 170 and 200 and Gootee continued to complain of panic attacks. Belanger encouraged her to be compliant with diabetes management and prescribed Cymbalta. In May 2018, Gootee reported that she had been very stressed out and her blood sugar was running in the 300s. She had stopped taking Cymbalta but had started seeing a therapist. [Tr. 367]

Gootee's most recent lumbar imaging was performed in October 2014. [Tr. 327] It revealed mild foraminal narrowing at L5-S1 due to spurring and a mild disc bulge. A chest x-ray was conducted in July 2016 following complaints of chest pain, with normal reulsts. An EKG and stress test indicated poor exercise tolerance but no evidence of ischemia. [Tr. 332-

35] On September 26, 2017, a diabetic eye exam indicated that Gootee had 20/20 vision and did not reveal diabetic retinopathy. [Tr. 405]

Gootee was treated twice by Randall Hall, DPM, at Bluegrass Foot and Ankle Clinic. [Tr. 428] In April 2018, Hall observed that Gootee did not have any wounds on her feet and her lower extremity strength was normal. However, she did have diminished sensation and tenderness bilaterally. Hall cast Gootee for custom orthotics and prescribed gabapentin. Gootee returned to Hall in February 2019 for corns and callouses. [Tr. 427] Surgical and conservative treatment options were discussed, but Gootee did not choose to proceed with surgery. Hall dispensed the custom orthotics and prescribed urea cream.

Amy Hiler, D.O., examined Gootee on April 28, 2018. [Tr. 354] Gootee complained at that time of back pain, fatigue, and panic attacks. Hiler noted that Gootee's gait was normal and she was able to rise from a seated position without assistance. [Tr. 355] She could heel and tandem walk without problems but could not stand on toes or bend and squat without difficulty. Gootee was alert and oriented, cooperated, and able to communicate effectively, but appeared anxious.

Hiler concluded that Gootee should be able to sit, walk, and/or stand for a full workday with sufficient rest breaks. However, she reported that Gootee might not be able to lift and carry objects without limitations due to tremors. Hiler noted that the claimant could hold a conversation, respond appropriately to questions, and carry out and remember instructions. Ultimately, she recommended a psychiatric consult because she believed mental illness limitations outweighed physical limitations. [Tr. 356]

Gootee began counseling at White House Clinic on February 7, 2018. [Tr. 359] Donetta Peek, LCSW, observed that Gootee had experienced significant trauma throughout

her life and that her symptoms were consistent with severe anxiety. While Gootee was able to attend to her grandchildren's basic needs, she felt she was unable to concentrate on housework. Peek educated Gootee on deep breathing techniques, imagery, meditation, and muscle relaxation. Gootee attended a total of three counseling sessions, concluding on May 2, 2018. Although Gootee exhibited moderate progression, she did not return for additional scheduled sessions. [*See* Tr. 365.]

Peek issued a medical source statement regarding Gootee's mental health on October 8, 2018. [Tr. 419-21] Peek indicated that Gootee had chronic post-traumatic stress disorder, panic disorder, and other specified depressive disorder. According to Peek, Gootee's symptoms included panic attacks, extreme startle responses, poor sleep, flashbacks, poor concentration, crying spells, anhedonia, guilt, difficulty making decisions, irritability, social withdrawal, lack of trust, and poor motivation. Peek opined that these matters would interfere to the point that Gootee would be unable to maintain persistence and pace to engage in competitive employment. Further, she reported that the symptoms limited Gootee's abilities to perform activities of daily living, social functioning, and concentration, persistence, and pace to a marked degree. Peek also reported that Gootee had experienced extreme episodes of decompensation, defined as at least four or more in one year, each lasting two weeks. [Tr. 420] Finally, Peek opined that a minimal increase in mental demands or change would cause Gootee to decompensate and she would likely miss work more than four times per month due to psychological symptoms.

Barry Rebeck, M.D., provided a medical source statement regarding the state of Gootee's mental health on November 9, 2018. [Tr. 423-25] Rebeck largely echoed Peek's

findings and reported that the claimant was unable to function outside of a highly supportive living situation. [Tr. 424]

State agency consultant T. Bessent, M.D., reviewed Gootee's file on May 21, 2018. [Tr. 97] Bessent concluded that Gootee could occasionally lift and/or carry 50 pounds and could frequently lift and/or carry 25 pounds. Bessent further opined that Gootee could sit and stand and/or walk about six hours in an eight hour workday. Bessent believed Gootee had an unlimited ability to push and/or pull, with the exception of the weight limits on her ability to lift and carry. Bessent concluded that Gootee could frequently stoop, kneel, crouch, crawl, and climb ramps, stairs, ladders, ropes, and scaffolds. [Tr. 96] Finally, Bessent reported that Gootee should avoid concentrated exposure to extreme cold and vibration due to her neuropathy. [Tr. 97] Allen Dawson, M.D., reviewed the file on August 19, 2018, and his findings were consistent with those of Bessent. [Tr. 109-114]

Dan Vandivier, Ph.D., reviewed the file on July 25, 2018. [Tr. 108] He concluded that Gootee had mild limitations with respect to the ability to understand, remember, or apply information; interact with others; concentrate, persist or maintain pace; and adapt or manage herself.

Dr. Belanger wrote in support of Gootee's social security application on October 9, 2018. [Tr. 422] He reported that she suffered from "severe debilitating anxiety and depression related to PTSD[,] . . . mak[ing] it difficult to concentrate and focus on tasks and deal with work related stress." Belanger additionally noted that Gootee suffered from chronic low back pain which made it difficult to bend and lift or stand and walk for prolonged periods. Finally, Belanger reported that Gootee's diabetes caused chronic pain and numbness in her feet. By February 2019, Belanger noted that Gootee was "finally using insulin" and her fasting salivary

glucose had improved. [Tr. 432-35] Additionally, he noted her diagnosis of PTSD, but indicated that she was "stable on present meds."

Following the administrative hearing, ALJ Lovitt determined that Gootee had the following severe impairments: obesity; poorly controlled type II diabetes mellitus; anxiety; post-traumatic stress disorder ("PTSD"); and degenerative disc disease. [Tr. 29] After considering the entire record, he determined that Gootee had the functional residual capacity to perform light work as defined in 20 C.F.R. § 404.1567(b), with the following modifications:

> Occasional climbing of ramps and stairs; frequent balancing; occasional stooping, kneeling and crouching; no crawling, climbing of ladders, ropes or scaffolds; no more than frequent exposure to temperature extremes, vibrations and workplace hazards such as dangerous machinery with moving parts that fail to stop when human contact is lost; with no fast-paced manufacturing sector production line or assembly work; would be off task for no more than 10% of the workday, in addition to normally scheduled breaks and would miss no more than one day per month due to her impairments.

[Tr. 32] The ALJ concluded that Gootee was capable of performing her past relevant work as a cashier, data entry and service clerk. [Tr. 36] Additionally, based on the vocational expert's testimony, the ALJ further concluded that there were other jobs existing in significant numbers in the national economy that she could perform. [Tr. 37] Accordingly, the ALJ found that Gootee was not disabled under the Social Security Act.

### III.

A "disability" under the Social Security Act is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007) (citing 42 U.S.C. § 423(d)(1)(A)). A claimant's Social Security disability determination is made by an ALJ in accordance with "a five-step 'sequential

evaluation process.'" *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (en banc). If the claimant satisfies the first four steps of the process, the burden shifts to the Commissioner with respect to the fifth step. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

A claimant must first demonstrate that she is not engaged in substantial gainful employment at the time of the disability application. 20 C.F.R. § 404.1520(b). Second, the claimant must show that she suffers from a severe impairment or a combination of impairments. 20 C.F.R. § 404.1520(c). Third, if the claimant is not engaged in substantial gainful employment and has a severe impairment which is expected to last for at least twelve months and which meets or equals a listed impairment, she will be considered disabled without regard to age, education, and work experience. 20 C.F.R. § 404.1520(d). Fourth, if the claimant has a severe impairment but the Commissioner cannot make a determination regarding disability based on medical evaluations and current work activity, the Commissioner will review the claimant's RFC and relevant past work to determine whether she can perform her past work. 20 C.F.R. § 404.1520(e). If she can, she is not disabled. 20 C.F.R. § 404.1520(f).

Under the fifth step of the analysis, if the claimant's impairments prevent her from doing past work, the Commissioner will consider her RFC, age, education, and past work experience to determine whether she can perform other work. If she cannot perform other work, the Commissioner will find the claimant disabled. 20 C.F.R. § 404.1520(g). "The Commissioner has the burden of proof only on 'the fifth step, proving that there is work available in the economy that the claimant can perform.'" *White v. Comm'r of Soc. Sec.*, 312

F. App'x 779, 785 (6th Cir. 2009) (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).

This Court's review is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the ALJ applied the proper legal standards in reaching his decision. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is such relevant evidence as reasonable minds might accept as sufficient to support the conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). The Commissioner's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g).

## IV.

Gootee contends that summary judgment in her favor should be granted because "the overwhelming weight of the treating and examining physician opinions prove that [she] is totally disabled." [Record No. 18-1, p. 11] The plaintiff has failed to develop this argument by applying it to the facts of the case. Instead, she has simply provided numerous out-of-context quotations from various cases within the Sixth Circuit. Regardless, the ALJ's decision is supported by substantial evidence and the plaintiff's argument fails.

The plaintiff's subjective complaints are inconsistent with objective test results and her own reports of what she is capable of doing on a daily basis. Although Gootee claims that she can barely walk or stand due to back pain, her most recent MRI shows only mild degenerative changes. To the extent Gootee claims that physical and mental limitations preclude her from completing activities or interacting with the public, this is inconsistent with her report that she goes shopping "every other day" for an hour at a time. [*See* Tr. 228] She also reported driving

her grandchildren to school every day, doing laundry every day, and cleaning her house. [Tr. 225]

The ALJ found the opinions of state agency consultants T. Bessent M.D., Allen Dawson, M.D., and Dan Vandivier, Ph.D., somewhat persuasive. Specifically, the ALJ found the mental limitations consistent with Gootee's activities of daily living and her recent reports of improved psychological symptoms. However, the ALJ determined that the recommended exertional limitations were not sufficiently restrictive because they did not account for Gootee's diabetic neuropathy and fluctuating blood glucose levels.

The ALJ also found Amy Hiller's opinion somewhat persuasive. While the opinion was consistent with and supported by the evidence of record, Hiller did not specify what she meant by "sufficient rest breaks" or the lifting and carrying limitations she indicated.

The ALJ found the opinions of Donetta Peek, Dr. Belanger, and Dr. Rebeck to be unpersuasive. The ALJ noted that the extreme limitations assessed by Peek and Rebeck were not supported by the evidence. To the contrary, Gootee is capable of performing household chores, driving, and raising her four grandchildren. Gootee did not require extensive mental health treatment such as inpatient or psychiatric hospitalization. Further, Dr. Belanger based his statement, in significant part, on a distant traumatic event after which the plaintiff held full-time work for years. Belanger's other statements were conclusory and were not supported by objective evidence or reference to treatment records.

Plaintiff does not articulate how the ALJ erred in evaluating these opinions. Under agency rules for considering opinion evidence, an ALJ must assess the persuasiveness of medical opinions using the following factors: 1) supportability; 2) consistency; 3) relationship with the claimant; 4) specialization; and 5) other factors. 20 C.F.R. § 404.1520c(a)(c).

Supportability and consistency are the two most important factors, and the only ones that the ALJ *must* address in his decision. 20 C.F.R. § 404.1520c(b)(2). Here, the ALJ has done so with regard to each of the medical opinions at issue. [Tr. 34-35] Because the ALJ has applied the correct legal standard and his findings are supported by substantial evidence, those findings are conclusive, and plaintiff's argument fails.

Gootee next argues that "the lay testimony proves that [she] is totally disabled," and that the ALJ "fail[ed] to apply the Sixth Circuit pain standard." [Record No. 18-1, p. 12] Plaintiff does a marginally better job at developing these arguments and applying them to the facts of the case, but they remain unavailing.

Without specifically addressing what "lay testimony" to which she refers, Gootee appears to argue that her past work history should conclusively establish the credibility of her statements that she is disabled, and that the ALJ failed to clearly set forth his reasons for discounting those statements. [Record No. 18-1, pp. 11-12] While it is true that a claimant's inclination towards employment may support their credibility, that alone does not conclusively establish the credibility of a claimant's assertions. *See Allen v. Califano*, 613 F.2d 139, 147 (6th Cir. 1980) (discussing a plaintiff's inclination towards employment as one factor among many undermining the finding that she could engage in substantial gainful employment). Moreover, the ALJ *did* clearly explain his reasons for discounting Gootee's allegations regarding the intensity and limiting effects of her symptoms, and in doing so correctly applied the "pain standard."

The ALJ first set forth the two-step process for considering a claimant's symptoms (which Gootee refers to as the "pain standard"). [Tr. 33] The ALJ next outlined the list of factors used to evaluate the intensity, persistence, and limiting effects of an individual's

- 11 -

symptoms.[2] [*Id.*] Having set out the proper legal standard, the ALJ concluded that Gootee's medically determinable impairments could reasonably be expected to cause her alleged symptoms, but that her statements concerning the intensity, persistence and limiting effects of the symptoms were not consistent with the objective evidence. [Tr. 34]

In explaining the reasoning behind this conclusion, the ALJ noted that Gootee's statements were contradicted by the evidence of record. [*Id.*] As the ALJ discussed, despite Gootee's allegations of debilitating symptoms, her treatment regime was conservative, consisting mostly of routine follow-up visits with Dr. Belanger, who recorded largely normal findings. [Tr. 370, 373-76, 379-81, 434-45, 440, 446, 452] The ALJ noted that Gootee had not been referred to any specialists nor placed in any notable studies or treatment programs. [Tr. 34] Such conservative treatment and normal findings undercut Gootee's allegations about the intensity of her symptoms. *See* 20 C.F.R. § 404.1529(c)(4) (stating an ALJ must consider conflicts between a claimant's statements and the signs and laboratory findings); *Helm v. Comm'r of Soc. Sec. Admin.*, 405 F.App'x 997, 1001 (6th Cir. 2011) (unpublished) (noting that a modest treatment regimen is generally inconsistent with a finding of total disability).

Additionally, the ALJ explained that Gootee's daily activities undermined her allegations as well. [Tr. 34] Again, despite Gootee's assertions about the severity of her symptoms, her testimony indicated that she was caring for her four grandchildren full-time, including transporting them to school, preparing meals, and doing laundry. [Tr. 225, 359] The ALJ reasonably relied on these facts to support his conclusion, as he was entitled to do. 20

---

[2] Such factors include the claimant's daily activities, the location, duration, frequency, and intensity of the symptoms, and any treatment the claimant has received for the symptoms, among others. 20 C.F.R. § 404.1529(c)(3).

C.F.R. § 404.1529(c)(3)(i) (stating that an ALJ must consider a claimant's activities); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 543 (6th Cir. 2007) (illustrating that it is appropriate for an ALJ to take a claimant's daily activities into account in making a credibility determination). As the above demonstrates, ALJ Lovitt applied the correct "pain standard," clearly set forth the reasons for his credibility determination, and those reasons are supported by substantial evidence existing in the record. Therefore, the ALJ's determination is conclusive and the plaintiff's arguments on these points fail.

Finally,[3] Gootee argues that the "[v]ocational [e]xpert's testimony proves that [she] is totally disabled." [Record No. 18-1, p. 13] She does not explain how or why, or even cite to the vocational expert's testimony. In any event, the testimony of the vocational expert does the exact opposite. The testimony provides substantial evidence to support the ALJ's finding that Gootee is not disabled.

The Sixth Circuit has established that a vocational expert's testimony concerning the availability of suitable work may constitute substantial evidence where the testimony is elicited in response to a hypothetical question that accurately sets forth the plaintiff's physical and mental impairments. *Smith v. Halter*, 307 F.3d 377, 378 (6th Cir. 2001) (citing *Varley v. Sec'y of Health & Hum. Servs.*, 820 F.2d 777, 779 (6th Cir. 1987)). Here the ALJ posed a hypothetical to the vocational expert setting forth Gootee's limitations. And the vocational expert testified that such an individual could perform Gootee's past relevant work. [Tr. 80-81] The vocational expert also testified that such a person would be able to perform three other

---

[3]   Though Gootee once again raises her Appointments Clause challenge to the ALJ who presided over her hearing, that challenge has already been rejected by this Court and will not be addressed in further herein. [Record No. 17]

representative unskilled light occupations existing in significant numbers in the national economy. [Tr. 81-83] The ALJ reasonably relied on this testimony in finding that Gootee was not disabled. [Tr. 36-37] Nothing more is required.

V.

Because ALJ Lovitt had "the enormous task of making sense of the record, reconciling conflicting medical opinions and evidence, and weighing the credibility of [Gootee's] subjective complaints," this Court's review is limited to whether he relied on evidence that "a reasonable mind might accept as adequate to support a conclusion." *Buxton v. Halter*, 246 F.3d 762, 775 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). At each stage of the analysis, ALJ Lovitt explained which evidenced compelled his conclusion, and why he considered certain evidence less persuasive. He considered the combined effects of Gootee's impairments and assigned an RFC that addressed those impairments. At the final step of the analysis, he relied on a vocational expert to determine that significant jobs exist in the nation economy that Gootee may perform. Therefore, his decision is supported by substantial evidence.

Based on the foregoing analysis and discussion, it is hereby

**ORDERED** as follows:

1. Plaintiff Kimberly Gootee's motion for summary judgment [Record No. 18] is **DENIED**.

2. Defendant Acting Commissioner Kilolo Kijakazi's motion for summary judgment [Record No. 20] is **GRANTED**.

- 15 -

Dated: August 26, 2021.

                                         Danny C. Reeves, Chief Judge
                                         United States District Court
                                         Eastern District of Kentucky